The opinion of the Court was delivered by
O’Neall, J.
In this case, it does seem to me that it would' *178 be enough to say, that the decree given in evidence is that set out in the replication, and denied in the rejoinder; and that, therefore, the plaintiff proved his case, and is entitled to retain the verdict which he obtained on the circuit.
But as various matters have been drawn in controversy by the zealous and able counsel of the defendant, it is perhaps necessary to give some of the points raised a brief consideration.
It is supposed the Ordinary had no power or jurisdiction to amend his decree. How this can be urged, after Lesly, Ordinary, vs. Osborn, 2 Rich. 90, I cannot comprehend. It is true, that amendment was made within three days, and, of course, within the time allowed for an appeal. But if the decree of the Ordinary is a final, conclusive judgment, not at all examinable for correction, neither of these particulars can affect it. So, too, the supposed consent of parties, so much dwelt upon, cannot help the argument; for consent never gave jurisdiction, and if it be that this is not a question of jurisdiction, as I think it is not, then consent and default stand alike, and so far as parties are concerned, authorize the action of the Ordinary.
In this case, when it was before this Court in 1851, (4 Rich. 271,) the plaintiff was advised to procure an amendment of the Ordinary’s decree; and, upon motion to the Court, to obtain leave to amend his replication. All this has been done, and it would make the Court guilty of a strange inconsistency, to turn round and say to the plaintiff, You cannot recover, because you have conformed to this suggestion.
The defendant supposes that the amended decree is void, and therefore his rejoinder was right, in denying such a decree. What makes it void ? We have already seen that the Ordinary is allowed to amend his decrees, in certain cases. Here he has amended this, on the default of the party, and has corrected it in two matters of course, one to ascertain each dis-tributee’s share, and the other to allow interest. Even in Chancery in England, such amendments would be allowed until the decree is enrolled. In 2 Dan. Ch. Pl. and Pr. 1232, it is said, “We have seen before that as long as the decree remains in the *179 shape of minutes, that is, till it has been passed and signed by the Registrar, it may be rectified upon application to the Court, •by petition or motion, or by having it put into the cause paper, :to. be spoken to,’ and that even important matters may be brought before the Court, upon an application to vary minutes.”
Is the Ordinary’s decree entitled to a higher rank than the minutes of a Chancery decree ? Surely not. Indeed, I think a decree of the Ordinary is more in the shape of a master’s report, examinable and amendable, at any time, before it is finally enforced in law or equity.
Even in enrolled decrees clerical errors are corrected. 2 Daniel, Ch. Pl. and Pr. 1233. These authorities, it seems to me, sufficiently vindicate the power of amendment. The case of Wiley, Ordinary, vs. Johnsey, 6 Rich. 360, fully recognizes the same doctrine. So, too, does the case of Davant vs. Pope, 6 Rich. 261.
The Ordinary, in this case, made the amendment after the administrator had been cited to attend for that particular pur-' pose and had made default. This, as I have said, is equivalent to consent, for it is the party’s silence, and is the same as saying, I have nothing to urge against your action. Is not this conclusive against him? and it seems to me it is equally so against his surety. This is affirmed in Norton, Ordinary, vs. Wallace, 2 Rich. 460. In that case, it is said: “ Where any matter belongs peculiarly to the jurisdiction of one Court, and other Courts can only take cognizance of the same subject indirectly and incidently, the latter are bound by the sentence of the former, and must give credit to it.” This covers the point now made ; for the decree now drawn in question was made by the Court having jurisdiction of the subjéct matter, and here it comes in, incidentally, as matter of evidence. How this Court can undertake to say it is wrong, is the difficulty in the way of the defendant, and it seems to me to be insuperable, even if the decree were wrong ; but it is manifest it is right, and the only objection is a supposed conclusiveness of the first decree.
*180 But the Ordinary’s decree does not stand as a judgment, technically speaking: it has no lien ; it cannot be enforced by a fi. fa. In Ordinary vs. Wallace, 1 Rich. 507, the Court of Errors held, that the decree was, as against'hhe surety, prima facie merely. This being so, and the decree wanting every essential of a final judgment, how can it be otherwise than amendable. The Ordinary is a mere accounting officer, and his jurisdiction over his own statement of the accounts, for their correction, is, I think, clear, until it has passed into a decree in Equity on appeal, or into a judgment of the Law Court in an action on the bond.
But if it were conceded the Ordinary might be wrong in making the correction, how can the defendant now, and in this case, ask for relief? His principal might, if he had thought proper, have appealed to the Court of Equity, and had the matter there corrected. Act 1839, § 13 (11 Stat. 42.) In Faust vs. Bailey, 5 Rich. 107, a failure to appeal from the decree of the Ordinary directing partition, was held to conclude the party from the assertion of even a good adverse title, when sued for the land. In this case, certainly, there is much more reason to hold the administrator and his surety bound.
The motion is dismissed.
WxtheRs, Whitner, Glover and Munro, JJ., concurred.

Motion dismissed.